857 So.2d 1189 (2003)
STATE of Louisiana
v.
Danon BARTON.
No. 02-KA-163.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2003.
*1192 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Gevin Grisbaum, Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee.
*1193 James A. Williams, Butch Wilson, Gretna, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and CLARENCE E. McMANUS.
EDWARD A. DUFRESNE, JR., Chief Judge.
On March 23, 2000, a grand jury for Jefferson Parish returned an 11-count indictment against defendant, Danon Barton and two others, James Jenkins and Keith Lipton, alleging that they committed one count of conspiracy to commit armed robbery (LSA-R.S. 14:26 and 14:64); one count of aggravated burglary (LSA-R.S. 14:60); two counts of armed robbery (LSA-R.S. 14:64); one count of simple burglary (LSA-R.S. 14:62); two counts of attempted armed robbery (LSA-R.S. 14:27 and 14:64); three counts of aggravated kidnapping (LSA-R.S. 14:44.4); and one count of possession of stolen property valued at more than $1,000 (LSA-R.S. 14:69). At the arraignment on March 27, 2000, defendant pled not guilty. The state subsequently amended the indictment to change the aggravated kidnapping charges to three counts of armed robbery, and to add count 12, charging defendant and Jenkins with aggravated burglary (LSA-R.S. 14:60).
Following a jury trial on March 15 through 17, 2001, defendant was found guilty as charged of conspiracy to commit armed robbery (count 1), both counts of attempted armed robbery (counts 6 and 7), and possession of stolen property valued at $500 or more (count 11). The jury returned responsive verdicts of simple robbery as to counts 8, 9 and 10 (armed robbery), and a responsive verdict of burglary of an inhabited dwelling as to count 12 (aggravated burglary). Finally, the defendant was acquitted on counts 2, 3, 4, and 5.
On August 12, 2001, the trial judge sentenced the defendant to five years at hard labor without benefit of parole, probation or suspension of sentence for conspiracy to commit armed robbery and each count of attempted armed robbery (counts 1, 6, and 7). The trial judge also sentenced defendant to one year at hard labor for each count of simple robbery (counts 8, 9, and 10), possession of stolen things (count 11), and simple burglary of an inhabited dwelling (count 12), with that sentence to be served without benefit of parole, probation or suspension of sentence. All of the sentences were ordered to be served consecutively with each other. Defendant now appeals.

FACTS
The trial testimony revealed that crimes were committed on August 9, 1999, August 12, 1999, and August 14, 1999.
On August 9, 1999, at approximately 11:00 p.m., Detective McGregor of the Kenner Police Department responded to an armed robbery and a burglary at 3432 East Loyola Drive in Kenner, the home of Supatra Bass. According to Ms. Bass, three men entered the home and robbed the occupants at gunpoint after she and her eldest son, Supachart Uaroon, returned from Wal-Mart. Mr. Uaroon said that there were two black men who entered the house, and both Ms. Bass and Mr. Uaroon said they saw a dark, American-made car parked near their house before the men entered the home.[1]
*1194 The next day, Ms. Bass found a cellular telephone that did not belong to anyone in the home. Detective McGregor subsequently learned that the telephone belonged to co-defendant, Keith Lipton, with an address of 1960 Elizardi Street in New Orleans. Detective McGregor showed photographic lineups of Lipton and another man, Ryan Henderson, to the victims. Both identified Lipton, and one of them tentatively identified Henderson. However, Detective McGregor later learned Henderson could not have been involved, since he was in prison at the time.
Detective O'Neil of the Jefferson Parish Sheriff's Office investigated the incident that occurred on August 12, 1999 at a Metairie Wal-Mart. The victims, Mr. and Mrs. Kiv, testified at trial that they had been vacationing in New Orleans and were on their way home to Texas. Between 12:30 and 1:00 a.m., they stopped at Wal-Mart. When the Kivs returned to their automobile, they discovered that the drivers' side window was smashed and that her luggage and other belongings were missing.
Shortly thereafter, a dark-colored car with three men inside approached. Mrs. Kiv testified that a young man exited the car wearing a bandanna and a hat, pointed a gun at her, and demanded her purse. Mr. Kiv said that the man attempted to rob him as well. Mr. Kiv saw another man exit the car, while another person remained in the car. The couple successfully eluded the men by running inside of Wal-Mart. Mr. Kiv described the car as having a "loud" muffler, and Mrs. Kiv said the car was "noisy."
Detective O'Neil forwarded photographic lineups containing photos of the defendant, and co-defendants, Lipton and Jenkins, to a police department in Texas. Detective O'Neil learned that Mr. Kiv was unable to identify anyone and that Mrs. Kiv was apparently afraid to even look at the lineups.[2]
Detective Cunningham of the Kenner Police Department was assigned to investigate the August 14, 1999 incident involving Eric and Lien Tran, and Mrs. Tran's sister, Rebecca Nguyen. Around midnight, after finishing their shifts as waitresses, Ms. Nguyen and Mrs. Tran went to Wal-Mart. They shopped and then returned to the Tran's residence in Kenner. As the two women and Mr. Tran brought the purchases into the house, a car drove up and parked. Two men wearing bandannas on their faces approached and ordered everyone inside at gunpoint. The men told them to lie on the floor and demanded money. One of the men demanded Ms. Nguyen's purse, but she had left it in the car. All she had in her pocket was her car key, which the man took. Ms. Nguyen saw a third man enter the house later. Although he was not wearing a mask, she was subsequently unable to identify anyone.
Mrs. Tran, who was four months pregnant at the time, said that the gunman demanded to see the "safe." She showed them the safe in the bedroom, which did not contain any cash. Ultimately, Mrs. Tran handed over a check that she intended to deposit. The men continued to demand cash, and threatened to kill her. They also took Mr. Tran's bag and his wallet.
The men ransacked the house and found a locked box under the bed. One of the Trans opened the box containing $50,000 in *1195 cash and a "V" shaped necklace (State's Exhibit 2) belonging to Mr. Tran's mother, which the men took. Mrs. Tran stated that a third man had entered the house and that all three men were rummaging through the box.
Ms. Nguyen and Mr. Tran said the car that pulled up at the house was a dark-colored car and Mr. Tran said the car had a loud muffler. None of the victims were able to identify anyone as the perpetrators from photographic lineups. However, Detective McGregor testified that Mr. Tran's bag was subsequently recovered, and it contained fingerprints that were determined to belong to Lipton.
Later on August 14, 1999, the defendant, Lipton, and Jenkins purchased automobiles at Affordable Used Cars. The owner of the business, John Bridges, testified that all three paid cash for the automobiles, specifically defendant paid $4350, Lipton paid $5200, and Jenkins paid $3500.
On August 17, 1999, a search warrant was executed at 1960 Elizardi Street, which was listed as Lipton's address by his cellular phone provider. There, the police recovered the necklace taken from the Tran's residence. Detective Cunningham testified that there was a warrant for Lipton's arrest and that they had information concerning Lipton's whereabouts. New Orleans police officers subsequently stopped the defendant in his new car with Lipton, and Lipton was arrested pursuant to the arrest warrant.
Detective Cunningham went to the New Orleans Police Department to talk to the defendant. Detective Cunningham stated that he did not consider the defendant a suspect at the time, but that he only wanted to speak to the defendant to see if Lipton had said anything to the defendant about the case. Detective Cunningham testified that the defendant told him that Lipton had called that day to ask for help leaving town because he was wanted by the police. Detective Cunningham testified that he asked the defendant if he would give a statement in Kenner, and he agreed.
Detective Cunningham did not consider the defendant to be a suspect and did not have the defendant in custody in Kenner. The defendant said that he had told the truth in New Orleans, but that he had additional information that he wanted to relate. Detective Cunningham began talking to the defendant, but stopped to advise the defendant of his constitutional rights when the defendant said that he knew the police were looking for a blue Chevy Lumina, that he had blue Chevy Lumina, and that he had loaned his car to Lipton. After the defendant waived his rights, the defendant told Detective Cunningham in a taped interview that he had loaned his car to Lipton the preceding week around Thursday (August 12, 1999) and Friday (August 13, 1999). The defendant stated that Lipton told him, before taking the car on Friday, that he was going to Kenner to "get paid," which the defendant said meant that Lipton was going to rob someone. Lipton returned the car at approximately 1:00 a.m., told the defendant he had robbed some "Chinese" people, and gave the defendant $2300 in cash. Thereafter, the defendant brought Lipton home. The defendant related that Lipton had given him $1400 in 100 dollar bills on August 17, 1999 to take him out of town and keep his "mouth shut." Finally, the defendant denied knowing anything about any other robberies. Defendant said that he told his girlfriend to take the Lumina to Mississippi because it was a "hot" car.
Approximately three hours later, the defendant made a taped statement to Detective O'Neil in which he admitted he drove to Wal-Mart with Lipton and Jenkins on August 12, 1999 and spotted a couple from *1196 Texas (the Kivs). According to the defendant, he parked the car and went inside Wal-Mart while Jenkins and Lipton stayed outside to watch for the victims. Defendant said he went inside of Wal-Mart and returned to find Jenkins and Lipton rummaging through the victims' automobile. The defendant said that Lipton and Jenkins returned to the car empty-handed. According to the defendant, all three of them waited ten or twenty minutes for the victims to exit Wal-Mart. As the victims exited, Lipton and Jenkins covered their faces with bandanas, and the defendant drove beside the victims when they reached their automobile. Lipton, armed with a black, metal BB gun, approached the man, while Jenkins, armed with a real handgun, approached the lady. Jenkins and Lipton ran after the victims, but returned to the car when the victims eluded them. According to the defendant, Lipton and Jenkins wanted to "go on another run," but the defendant refused. Defendant said he allowed Lipton to borrow his car the following night, after which Lipton gave him $2300.
After Jenkins was arrested on August 27, 1999, the police interviewed his girlfriend, Laquwanda Dowell. Ms. Dowell admitted that the defendant and Lipton came to her home one night where she lived with Jenkins. According to Ms. Dowell, the three left and returned late at night with money. She acknowledged that she heard the defendant count "thirteen ninety." Ms. Dowell admitted she had told the police she saw money and jewelry, but that she made the statement under threats from Detective Cunningham that he would have Child Protection investigate her. However, Ms. Dowell testified that she did see a "V" shaped necklace on the same night they were counting money, and she identified State's Exhibit 2 as a necklace that "looks like" the necklace she saw that night.
The state called Jenkins and Lipton to testify pursuant to a grant of immunity. Although the two admitted that they had entered guilty pleas in this case, they refused to inculpate anyone else and refused to testify even when threatened with contempt.
At trial, the defendant and his girlfriend testified for the defense. The defendant claimed that he lied in the statements because the police told him that he could go home if he implicated Lipton. Although he admitted that he was with Jenkins and Lipton at Wal-Mart, he denied having anything to do with the offenses. Both the defendant and his girlfriend, Aquilla Green, testified that they were planning to go to Mississippi to visit Ms. Green's relatives. She denied that she drove the car to Mississippi to hide it from the police. Ms. Green said that she returned in the car once the defendant's mother called her in Mississippi.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant contends that he was denied his right of confrontation because the trial judge allowed the state to introduce evidence of statements made by co-defendants, Keith Lipton and James Jenkins, that inculpated the defendant.
In the present case, the state filed motions to compel the testimony of James Jenkins and Keith Lipton pursuant to the grant of statutory immunity of LSA-C.Cr.P. art. 493.1, and the trial judge granted the motions. Jenkins and Lipton initially admitted their own culpability in the charged offenses, but refused to inculpate anyone else. Beyond that, both refused to testify even in the face of contempt charges.
*1197 The defendant objected when Detective McGregor testified that Jenkins had given a statement in which he said that defendant and Lipton told him that Sammy Brown was in the car on August 9, 1999. The defendant also objected after the prosecutor asked Detective McGregor whether he had developed information from the statements of Lipton, Barton and Jenkins regarding whose vehicle was used in the August 9 and August 14 incidents. The court overruled the objections and Detective McGregor answered that the defendant's four-door Chevy Lumina was the vehicle. The prosecutor asked the same question about the August 12, 1999 incident, but the detective never answered that question.
The prosecutor asked Detective Cunningham whether he had learned, through the statements of Lipton, Jenkins, and the defendant, that any vehicle other than defendant's was used in these incidents, and Detective Cunningham replied negatively. The defendant's objections were overruled. Finally, the defendant objected and moved for a mistrial after Detective O'Neil's testimony that Lipton had implicated someone else in the August 12, 1999 incident, but that person was not Sammy Brown, Ryan Henderson, or Alvin Jarvis.
The defendant contends that the elicited testimony violated his constitutional rights of confrontation and cross-examination, citing Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). In that case, the defendant's accomplice refused to testify at the defendant's trial. Under the guise of cross-examining the accomplice, the prosecutor read the accomplice's confession that implicated the defendant as the gunman. The Douglas court reversed the defendant's conviction, holding that the prosecutor's reading of the nontestifying accomplice's confession that implicated the defendant as the triggerman denied the defendant the right of cross-examination guaranteed under the Confrontation Clause of the Sixth Amendment. Douglas v. Alabama, 380 U.S. at 419-420, 85 S.Ct. 1074.
The present case is distinguishable from Douglas in that the prosecutor did not read from either Lipton's or Jenkins' statement when questioning them. Nor did the prosecutor read from their statements when questioning the officers. Rather, the officers' testimony regarding what they learned from all three (Jenkins, Lipton and Barton) about the car used in the robberies was properly admitted, since Barton said in his statement that he was driving the car on August 12, 1999, and that he loaned his car to Lipton so that Lipton could commit a robbery on August 14, 1999.
The only testimony elicited from the officers regarding a co-defendant's statement that inculpated the defendant came from Detective McGregor, who said that Jenkins told him that the defendant named the individual who was in the car on the August 9, 1999 incident. Even if this testimony was improperly admitted, the United States Supreme Court and the Louisiana Supreme Court have recognized that the improper admission of an accomplice's statement is subject to the harmless error rule. See, Lilly v. Virginia, 527 U.S. 116, 139-140, 119 S.Ct. 1887, 1901, 144 L.Ed.2d 117 (1999); State v. Lucky, 96-1687 (La.4/13/99), 755 So.2d 845, 858, cert. denied, 529 U.S. 1023, 120 S.Ct. 1429, 146 L.Ed.2d 319 (2000). Considering that the defendant was acquitted of the robberies and burglary relating to the August 9, 1999 incident, we find that any error in admitting this testimony was harmless. Further, there was other evidence presented at trial that established the defendant's guilt in the crimes for which he was convicted.
*1198 In the final paragraph of his discussion in this assignment, the defendant asserts that reversible error occurred because the trial judge allowed the state to ask questions of Lipton and Jenkins in front of the jury when the state knew neither of them would answer the questions.
In State v. Haddad, 99-1272 (La.2/29/00), 767 So.2d 682, the Louisiana Supreme Court reaffirmed the principle that it is impermissible to knowingly call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege. In the present case, the prosecution did not call Lipton and Jenkins to the stand for the purpose of exercising a privilege. Rather, the prosecutor sought to elicit substantive testimony from both Lipton and Jenkins. Further, it is arguable that the state did not know Lipton and Jenkins would refuse to testify in light of the grant of statutory immunity. Indeed, both Lipton and Jenkins answered some of the questions even after they initially told their attorneys they would refuse to do so.
Based on the foregoing discussion, the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, the defendant challenges the trial court's denial of his motion to suppress statements. The defendant contends that his statements were the product of an illegal arrest, and therefore should have been suppressed. The defendant also claims that the state failed to rebut his allegation that he made the statements under duress after the police officers from New Orleans, Kenner and Jefferson Parish threatened him.
As noted by the state in its appellate brief, the defendant did not challenge the statements as the product of an illegal arrest at the suppression hearing. At the suppression hearing, the testimony of Detective O'Neil and Cunningham focused on the circumstances surrounding the statements, not the arrest. Detective Cunningham specifically testified that he did not know how the defendant ended up at the New Orleans Police Station, and Detective O'Neil stated that he first talked to the defendant at the Kenner Police Department. Both detectives denied that they had threatened or promised the defendant anything to compel his statement. Further, Detective Cunningham stated that, although the defendant was not advised of his rights, defendant was not under arrest and was not considered a suspect at that time. Subsequently, Detective Cunningham advised the defendant of his rights when he admitted loaning the car to Lipton, and a taped statement was taken thereafter. Detective O'Neil testified that he also advised the defendant of his rights before interviewing him, the defendant waived his rights, and gave a taped interview. At the conclusion of the hearing, the trial judge denied the motion to suppress.
A portion of this original suppression hearing was not transcribed because one of the tapes from the hearing was lost. The missing tape contained the defendant's testimony as well as a portion of Detective McGregor's testimony. On January 16, 2001, the trial judge held a hearing to address the missing transcript. It was at this subsequent hearing that defendant's new counsel asserted for the first time that the statements should be suppressed because he was illegally arrested. The state argued that the defendant should be precluded from re-urging the motion on a new basis, and the trial court agreed. The trial judge reasoned that the facts and circumstances were known to the defendant at the time of the original motion to suppress and that a defendant should not be able to *1199 re-urge a new basis for the motion simply upon obtaining new counsel. Accordingly, the trial court refused to permit the defendant to call New Orleans police officers whom the defense had subpoenaed. However, at this hearing, Detective McGregor was available to testify. Defendant's attorney did not question him, stating that he was satisfied with the record as it existed regarding the detective's testimony. The trial judge also permitted the defendant to testify to reconstruct the record from the original suppression hearing. After the defendant testified, the trial judge found that he was not a credible witness and affirmed his former ruling denying the motion to suppress.
In the present case, the defendant did not argue at the original suppression hearing that the statements were the product of an illegal arrest. As a result, the record does not disclose any evidence of the circumstances preceding Barton's arrival at the New Orleans Police Station. Therefore, this court is now precluded from reviewing this claim on appeal. For these same reasons, we are also precluded from addressing the defendant's claim that the state failed to rebut his allegations of duress by the New Orleans police officers.
However, we will review the defendant's original claim that the statements were not knowingly or voluntarily made. Defendant specifically asserts that his statements were involuntary as the product of duress by Detectives Cunningham and O'Neil and that the state failed to rebut this testimony.
Before a confession or inculpatory statement can be admitted into evidence, it must be established that the accused who makes the statement during custodial interrogation was first advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Accord, State v. Vigne, 01-2940, p. 6 (La.6/21/02), 820 So.2d 533, 537. The state must also affirmatively establish that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(D); State v. Quest, 00-205, p. 9 (La. App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866.
At the suppression hearing, the defendant testified that plain clothes New Orleans police officers stopped his car and told him that there was an arrest warrant for Lipton. The defendant related that the officers handcuffed him and transported him against his will to the Seventh District Police Department in New Orleans. Defendant claimed that he told both the New Orleans officers and the Jefferson Parish officers that he wanted an attorney, but he was never allowed to speak with one. Defendant stated that he was handcuffed to a chair in Orleans, but was taken to another room where the handcuffs were removed. Defendant acknowledged that the New Orleans officers did not tell him that he was under arrest. The defendant stated that he was handcuffed when he was brought to Jefferson Parish, and he was not permitted to use the telephone there. The defendant claimed that he felt "coerced" and none of the officers would allow him to leave. Defendant also said that he did not tell the truth in his statement to Detective O'Neil because he wanted to go home.
To the contrary, the police officers testified that the defendant was not threatened or promised anything in return for making a statement. In reviewing the trial court's ruling as to the admissibility of a confession, the court's conclusions on the credibility of witnesses are entitled to the respect due those made by one who *1200 saw the witnesses and heard them testify. The trial court's ruling will not be overturned on appeal unless it is unsupported by the evidence. State v. Evans, 97-1030, p. 11 (La.App. 5 Cir. 4/15/98), 712 So.2d 941, 945, writ not considered, 98-2088 (La.12/18/98), 731 So.2d 276. Based on the foregoing discussion, we conclude that the trial judge did not abuse his discretion in believing the officers' testimony over the defendant's. Therefore, there was no error in the denial of defendant's motion to suppress. This assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In this assigned error, the defendant challenges the sufficiency of the evidence used to convict him. The defendant contends that the evidence was insufficient to prove the element of his identity as to all counts and insufficient to support his convictions for conspiracy, possession of stolen property, and the attempted armed robbery of Mr. Kiv.
The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 82.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La.1984). This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982).
We will first address the defendant's specific allegations of insufficiency. With regard to count one, the defendant alleges that the evidence was insufficient to support his conviction for conspiracy to commit armed robbery because there was no evidence to show the element of an "agreement." The elements of the crime of conspiracy are: (1) an agreement or combination of two or more persons for the specific purpose of committing a crime, plus (2) an act done in furtherance of the object of the agreement or combination. LSA-R.S. 14:26. Specific intent is an essential element of conspiracy. Proof of a conspiracy may be made by direct or circumstantial evidence. State v. Ellis, 94-599 (La.App. 5 Cir. 5/30/95), 657 So.2d 341, 361, writs denied, 95-2095 (La.12/8/95), 664 So.2d 421 and 95-1639 (La.1/5/96), 666 So.2d 300.
In the present case, defendant drove the get-away car during the attempted robberies of the Kivs. He facilitated the robberies of the Trans by loaning his car to Lipton with the knowledge that Lipton intended to commit a robbery, by sharing in the proceeds of the robbery, and by *1201 counting money with Lipton and Jenkins on the night of the robbery of the Trans. Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the defendant entered into an agreement to commit the armed robbery and committed an overt act in furtherance of the conspiracy. See State v. Guillory, 540 So.2d 1212 (La.App. 3 Cir.1989), where the court held that the evidence was sufficient to support the defendant's conviction for conspiracy to commit armed robbery although the defendant was not present during the actual robbery.
With regard to his conviction for possession of stolen property, the defendant asserts that the evidence was insufficient because the indictment fails to identify the stolen property and the person from whom it was stolen. The time for testing the sufficiency of an indictment is before trial by a motion to quash or an application for a bill of particulars. State v. Gainey, 376 So.2d 1240, 1243 (La.1979). A defendant may not complain of technical insufficiency in an indictment for the first time after conviction, when the indictment fairly informed him of the charge against him and the defendant is not prejudiced by the defect. State v. Michels, 98-608 (La. App. 5 Cir. 1/13/99), 726 So.2d 449.
In the present case, the defendant is precluded from raising this claim for the first time on appeal because he failed to challenge the sufficiency of the indictment in a motion to quash and because there is no prejudice. Specifically, the person from whom the property was stolen is not an element of the crime of possession of stolen property. LSA-R.S. 14:69. Further, the indictment identifies the stolen property as more than $1000 in U.S. currency.
Regarding this conviction, the defendant also contends that he was subject to the constitutional prohibition against double jeopardy because the stolen property must involve items taken during the charged robberies and burglaries.
The Fifth Amendment to the United States Constitution, as well as Article 1, § 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. See LSA-C.Cr.P. art. 591. Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal act. Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); State v. Washington, 95-771 (La.App. 5 Cir. 2/14/96), 670 So.2d 1255, writ denied, 98-0537 (La.9/25/98), 726 So.2d 7.
Louisiana courts have used two tests in examining violations of double jeopardy. The "distinct fact" test, commonly referred to as the Blockburger test, is taken from Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) as follows:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.
Accord, State v. Knowles, 392 So.2d 651, 654 (La.1980).
The second test is the "same evidence" test. In State v. Steele, 387 So.2d 1175, 1177 (La.1980), the Louisiana Supreme Court explained that test as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a *1202 plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial....
The "same evidence" test is broader than Blockburger, "the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct." State v. Steele, 387 So.2d at 1177. Although the Louisiana Supreme Court has accepted both the Blockburger test and the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. State v. Miller, 571 So.2d 603, 606 (La.1990).
The thrust of the defendant's claim is that his convictions for possession of stolen property and the three counts of simple robbery have put him in jeopardy twice for the same course of conduct. The indictment charges the defendant with possession of stolen U.S. currency of more than $1000 between August 14, 1999 and August 17, 1999.
The record reflects that the defendant admitted that Lipton gave him $2300 in cash on the night after the Tran robbery and that Lipton gave him $1400 in cash on August 17, 1999 as payment to take Lipton out of town and for the defendant to "keep [his] mouth shut." Although the defendant speculated that the $1400 was from the last robbery, the defendant stated that Lipton told him that he had been robbing people in his van. Accordingly, there was evidence, if believed by the jury, that the money the defendant was found to be in possession of on August 17, 1999, was not the subject of the Tran robberies.
On appeal, the defendant also contends that the evidence is insufficient to support his conviction of attempted armed robbery of Mr. Kiv. In the present case, the defendant drove Lipton and Jenkins to Wal-Mart and waited with Lipton and Jenkins in the parking lot for the victims to exit Wal-Mart. The defendant also admitted that he drove alongside the victims while Lipton and Jenkins, who had placed bandannas over their faces and armed themselves, confronted the victims, Mr. and Mrs. Kiv. Defendant drove away only upon Lipton and Jenkins' return. Further, the defendant admitted in his statement that both Lipton and Jenkins chased Mr. and Mrs. Kiv. At trial, when asked whether the man who approached him attempted to rob him, Mr. Kiv replied affirmatively. The defendant took no actions to prevent the crime, which occurred in his presence, nor did he leave the scene until after Jenkins and Lipton had safely returned to the vehicle. Based on the evidence, viewed in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the defendant was a principal[3] to the attempted armed robbery of Mr. Kiv. See State v. Saylor, 01-451 (La.App. 5 Cir. 11/27/01), 802 So.2d 937, writ denied, 01-3406 (La.10/4/02), 826 So.2d 1122, where this court affirmed the conviction, as principal to armed robbery, of a defendant who drove the gunman to the crime scene, waited as a lookout while the gunman got out of the car, robbed the victim, and then drove the car away after the gunman returned to the vehicle.
In addition to specific allegations of insufficiency, the defendant also makes a general allegation as to all counts that the evidence was insufficient to prove his identity *1203 as the perpetrator. In his appellate brief, the defendant asserts that no witnesses identified defendant as to any charge in the indictment, no evidence was seized from defendant's possession, and no fingerprints belonging to defendant were lifted from any of the crime scenes.
Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1054.
We have reviewed these general allegations presented by the defendant and find them to be without merit. As shown by the facts, as previously set forth in this opinion, we find that the state proved beyond a reasonable doubt that defendant committed the offenses of which he was convicted. The arguments raised by the defendant in this assigned error are likewise without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In his final assigned error, the defendant requests that this court review the record for errors patent according to LSAC.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors patent.
For the reasons set forth herein, the convictions and sentences of the defendant are hereby affirmed.
AFFIRMED.
NOTES
[1] Although the defendant was acquitted of all counts relating to the August 9, 1999 offenses at the Bass home, the events are included in the factual statement to explain how the investigation led to the defendant's arrest.
[2] The defendant was convicted of attempting to rob the Kivs, but acquitted for the burglary of their vehicle.
[3] LSA-R.S. 14:24 provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly procure another to commit the crime, are principals."