FREDERICKA HOMBERG WICKER, Judge.
laThe defendant/appellant, Howard Gofer, appeals his convictions and sentences arguing that the trial court erred in denying the motion to suppress his statement because the proper procedures afforded a juvenile were not followed.
Factual and Procedural Background
On March 8, 2010, Howard Clofer was charged by bill of information with attempted first degree murder in violation of La. R.S. 14:27:30 (Count One) and two counts of armed robbery in violation of La. R.S. 14:64 (Counts Three and Four).[1]' Howard pled not guilty at the arraignment and later moved to suppress his statement, identification, and the evidence seized from his home. All motions were denied. The State amended the bill on January 10, 2011, to dismiss Count One and to add Howard to Count Two of the bill. During the Boykin hearing, which occurred that same day, Howard withdrew his guilty pleas and pled guilty, under State v. Crosby, 338 So.2d 584 (La.1976), to two counts of armed robbery and one count of attempted armed robbery. Pursuant to a plea agreement, Howard was | ¡¡sentenced to 17 years imprisonment in the Department of Corrections without the benefit of probation, parole, or suspension of sentence, with the sentences to be served concurrently. In this appeal, Howard argues that the motion to suppress his statement should have been granted because *641 the protective measures afforded a juvenile were not followed.
Sgt. Russell Varmall, of the Jefferson Parish Sheriffs Office, and Ms. Patrice Clofer, Howard’s mother, testified at the suppression hearing.
Sgt. Varmall testified that he participated in the investigation which led to Howard’s arrest. He testified that he arrested Howard at his home, a duplex housing unit, in which Howard’s aunt, Ms. Sharon Roussell, lived next door. As he perfected the arrest, Ms. Roussell came outside to see what was happening. Sgt. Varmall informed her that Howard was being arrested and that he needed to speak with Howard’s mother because he was a juvenile. Ms. Roussell then telephoned Ms. Clofer, and Sgt. Varmall spoke to her briefly. He testified that he informed Ms. Clofer that he needed to take Howard to the bureau for questioning but that a parent needed to be present. He further stated that Ms. Clofer told him she was hours away and gave Howard’s aunt permission to accompany him to the bureau. Sgt. Varmall testified that he transported Ms. Roussell and Howard in his unit to the bureau for questioning.
Once they arrived at the detective’s bureau, Sgt. Varmall presented Howard and his aunt with the “Juvenile Rights Form.” He testified that he reviewed the form with both of them and neither of them indicated they had questions about the form or their rights. He then gave Howard and his aunt an opportunity to discuss the rights among themselves but did not leave the room for them to do so privately. Both Howard and his aunt signed the form at 3:04 P.M. acknowledging that they understood the rights. Sgt. Varmall testified that Howard gave two audio-taped ^statements. The first statement commenced at 3:41 P.M. and concluded at 3:47 P.M. The second statement commenced at 3:59 P.M. and concluded at 4:05 P.M.
During the first statement, Howard stated that no one had used a gun during the robberies. When that statement concluded, Sgt. Varmall testified that he left the room to go speak with his supervisor about the facts of the case. After realizing there were some inconsistencies, specifically regarding the presence of a gun, Sgt. Var-mall returned to the interview room to question Howard further. It was during the second interview, while his aunt was still present, that Howard admitted that he was armed with a .38 silver and black gun during the first robbery.
Ms. Clofer also testified at the suppression hearing. She testified that her sister telephoned her and explained that the police were there to arrest Howard. She spoke to the detective who told her that Howard was in trouble and needed to be taken to the detective’s bureau for questioning. She stated that she informed the detective that she was in New Orleans and it would take her about three hours to get back. However once the officer told her that a parent needed to be present, she stopped what she was doing and immediately went to the detective’s bureau. She testified that she made it to the detective’s bureau within 45 minutes after speaking with the detective. Once she arrived there and identified herself, she had to wait an additional 30 to 45 minutes before she was allowed to see her son. When she finally saw Howard, the questioning was over. She was then presented with a form authorizing consent to search her home, which she signed at 5:00 P.M.
Ms. Clofer testified that she wanted to be there for the interview and that she arrived at the detective’s bureau as soon as she possibly could. She further testified that though her sister loved Howard, the two of them were not close and How *642 ard’s aunt was not someone that he would confide in. She testified that Howard’s aunt did not have his best interest at heart.
UAt the conclusion of the hearing, the trial judge denied the motion to suppress the statement. The trial judge considered the totality of the circumstances and found that Howard made a knowing, intelligent, and voluntary waiver and that he had consulted with his aunt, whom she found to be a concerned adult.
Discussion
In his sole assignment of error, Howard contends that the trial court erred in failing to grant the motion to suppress his statement because the proper protective measures afforded a juvenile were not followed in this case.
At the hearing on a motion to suppress a statement, the State bears the burden of proving the admissibility of the purported statement. La.C.Cr.P. art. 703(D). Before introducing a defendant’s inculpatory statement made during a custodial interrogation, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, and that the statement was made “freely and voluntarily, and not under the influence of fear, intimidation, menaces, threats, inducement or promises.” State v. Rose, 05-770, p. 9 (La.App. 5 Cir. 2/27/06), 924 So.2d 1107, 1111, writ denied, 06-1286 (La.11/22/06), 942 So.2d 554. In reviewing a trial court’s ruling as to the admissibility of a confession, the court’s conclusions on the credibility of witnesses are entitled to the respect due those made by one who saw the witnesses and heard them testify. State v. Barton, 02-163 (La.App. 5 Cir. 9/30/03), 857 So.2d 1189, writ denied, 03-3012 (La.2/20/04), 866 So.2d 817. A trial court’s ruling will not be overturned on appeal unless it is unsupported by the evidence. Barton, supra, at 1200.
Howard argues that, as a juvenile, he should have been provided with extra safeguards before being allowed to waive his rights. In State v. Fernandez, 96-2719, p. 5 (La.4/14/98), 712 So.2d 485, 487, however, the Louisiana Supreme | fiCourt held that the confession of an accused of any age is valid if it was knowingly and voluntarily given. The Supreme Court noted,
[t]he age of the accused, although an extremely important and extremely relevant factor in determining knowingness and voluntariness, is not absolutely determinative, and the rigid invalidation of an otherwise valid confession because the accused has not quite reached the age of seventeen has no federal or state basis. Id.
Thus, in determining the validity of a waiver, courts should consider the totality of the circumstances, which includes an assessment of the “juvenile’s age, experience, education, background, and intelligence and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.” Fernandez, supra, at 487 (citation omitted).
In State v. Lathers, 09-0020, p. 6 (La.App. 5 Cir. 5/26/09), 15 So.3d 1068, 1072, writ denied, 09-1341 (La.2/12/10), 27 So.3d 841, this Court held, “the State is no longer required to affirmatively show that the juvenile engaged in a meaningful consultation with an attorney or an informed parent, guardian, or other concerned adult before the juvenile waived his constitutional rights.” Yet, Howard argues that his aunt lacked authority to waive his rights. To support his position, Howard relies on State ex rel. J.E.T., 09-0067 (La.App. 3 Cir. 5/6/09), 10 So.3d 1264. But as the State points out, J.E.T. is distinguishable *643 from the present case. In that case, the defendant was only 11-years old and had not quite completed the fourth grade when he confessed. Further, the Third Circuit found that he did not have an interested adult explain his rights as his stepfather was the biological father of the minor victim. That court also recognized that the officers employed questionable tactics to obtain the confession and that the juvenile’s parents made no attempt to protect his rights.
l7None of the factors present in J.E.T. are present in this case. First, Howard was a few days shy of turning 17-years old when he made his confession; while the defendant in J.E.T. had just turned 11-years old one week before confessing. Secondly, there is no allegation in this case that the police used coercive measures to obtain Howard’s confession. In fact, the record reflects that Sgt. Varmall advised Howard and his aunt of Howard’s rights, including Howard’s right to remain silent and talk to a lawyer. The record further reflects that Howard and his aunt signed and initialed the waiver form acknowledging that they understood those rights.
The admissibility of a statement or confession is first a question for the trial court, and its conclusions on the credibility and weight of testimony relating to volun-tariness of a statement will not be overturned on appeal unless not supported by the evidence. State v. Terrick, 03-0515, p. 10-1 (La.App. 5 Cir. 9/30/03), 857 So.2d 1153, 1159-60. Considering the totality of the circumstances, we find that the State met its burden of proving that the statement was knowingly and voluntarily made. Therefore, this assignment of error is without merit.
Error Patent Discussion
The record was reviewed for errors patent in conformity with La.C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337 (La.1975). Our review reveals there are errors patent.
The State amended the bill of information on January 10, 2011, to dismiss Count One and to add Howard to Count Two— attempted armed robbery. The record does not reflect, however, that Howard was arraigned as to Count Two. La.C.Cr. P. art. 555 provides:
[a]ny irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he | sdid not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.
In this case, the commitment reflects that Howard withdrew his not guilty plea as to Count Two and pled guilty as to Count Two. The transcript from the Boykin hearing reflects the same. Because Howard entered upon the trial without objecting thereto, any irregularity in the arraignment is waived and no corrective action is necessary.
We also note that when Howard was sentenced, the trial judge imposed a sentence of 17 years in the Department of Corrections rather than stating the sentence was imposed at hard labor. Nevertheless, when the trial judge states that the sentence is to the Department of Corrections, the sentence is necessarily at hard labor. Rochon v. Blackburn, 97-2799, p. 4 (La.App. 1 Cir. 12/28/98), 727 So.2d 602, 604. Therefore, no corrective action is necessary.
Finally, we note that the transcript reflects that Howard was sentenced on two counts of armed robbery and one count of attempted armed robbery and that each *644 count was to be served without the benefit of probation, parole, or suspension of sentence. However, the commitment only states, “sentence to be served without the benefit of parole, probation, or suspension of sentence.” It does not reflect that each sentence was imposed without benefits.
Decree
For the foregoing reasons, the convictions and sentences are affirmed. The matter is remanded to the district court to amend the commitment to reflect that each conviction is imposed without the benefit of probation, parole, or suspension of sentence. The district court is directed to make an entry in the minutes reflecting this change and the clerk of court is directed to transmit the amended | ncommitment and the minute entry to the officer in charge of the institution to which the defendant has been sentenced. La.C.Cr.P. art. 892(B)(2). State ex rel. Roland v. State, 06-0244, (La.9/15/06), 937 So.2d 846.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS

. Howard’s two co-perpetrators were charged in Count Two with attempted armed robbery. Initially, Howard was not included in that count because the armed robbery was the predicate offense of Count One, attempted first degree murder.