904 So.2d 82 (2005)
STATE of Louisiana
v.
Lawrence JACOBS.
No. 04-KA-1219.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
Rehearing Denied July 8, 2005.
*85 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Donnie Rowan, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
G. Ben Cohen, Christine Lehmann, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and WALTER J. ROTHSCHILD.
EDWARD A. DUFRESNE, JR., Chief Judge.
On August 15, 2002, the Jefferson Parish Grand Jury returned an indictment charging defendant, Lawrence Jacobs, with three counts of armed robbery, in violation of LSA-R.S. 14:64. Count one alleged that defendant robbed Mr. Ghebreab Ghebreziabher on October 25, 1996; count two alleged that defendant robbed Mrs. Aseghed Ghebreziabher on October 25, 1996; and count three alleged that defendant robbed Mr. Kenneth Stage on October 30, 1996. At the arraignment, defendant pled not guilty. Thereafter, numerous pretrial motions were heard and denied by the trial judge.
Following these denials, defendant withdrew his former pleas of not guilty and pled guilty to all three charges. Defendant entered his guilty pleas pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his appeal rights. The trial judge sentenced defendant to twenty-five years on each count to be served concurrently. Defendant now appeals.[1]

MOTION TO SUPPRESS IDENTIFICATION
In his first assigned error, defendant challenges the trial court's denial of his motion to suppress identification. Defendant specifically complains that Mr. Ghebreziabher's out-of-court identification of him from a photograph in a newspaper was tainted and unreliable, and that the trial court erred in failing to suppress it. Defendant further argues that Mr. Ghebreziabher's in-court identification was suggestive, in that defendant was the only African-American man in the courtroom dressed in prison garb.
A defendant who seeks to suppress an identification has the burden of *86 proving that the identification itself was suggestive. Even when the suggestiveness of the identification process is proved by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of misidentification as a result of the procedure. State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, 812, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000); State v. Peden, 04-71 (La.App. 5 Cir. 5/26/04), 875 So.2d 934, 942.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Evans, 03-0752 (La.App. 5 Cir. 12/9/03), 864 So.2d 682, 695, writ denied, 04-0080 (La.5/7/04), 872 So.2d 1079.
At the suppression hearing, Lieutenant Grey Thurman, a homicide detective, testified that Mr. Ghebreziabher arrived at the Jefferson Parish Sheriff's Office on November 4, 1996, and asked to speak with someone in the Homicide Division. Mr. Ghebreziabher showed Thurman that day's issue of The Times-Picayune newspaper. A front page article included photographs of defendant and Roy Bridgewater, labeled with their names. The article bore the headline, "Teens shift blame for killings." It referred to a double murder, unrelated to the instant case, in which defendant and Bridgewater were suspects. Mr. Ghebreziabher told Thurman that the two men pictured in the article had robbed him and his wife. Thurman testified that he conducted a tape recorded interview with Mr. Ghebreziabher that day, but did not ask the victim to view a lineup.
Mr. Ghebreziabher testified at the suppression hearing that he reported the robbery to police at the time it occurred. Officers instructed him to contact them in the future with any new information he had for them. Sometime between November 2 and November 4, 1996, Mr. Ghebreziabher saw a television news report regarding the two men who had robbed him.[2] He testified that when he saw them on television, he immediately recognized them, and he began to cry. The following morning, he saw the photographs in the newspaper, and again recognized the men as the two who had robbed him.
Mr. Ghebreziabher testified that no one told him to identify the two men in the newspaper as the robbers; that he went to the sheriff's department of his own volition. He said, "I can never forget the face, still every day, like mirror I see face." Defendant averted his face during most of Mr. Ghebreziabher's testimony, so that the victim could not see him. When the court ordered defendant to show his face, Mr. Ghebreziabher began to cry, and identified defendant as one of the two men who had robbed him. After listening to the testimony presented at the suppression hearing, the trial judge denied defendant's motion to suppress identification. Defendant now challenges this denial on several grounds.
Defendant first contends that Mr. Ghebreziabher's sighting of the defendant in the newspaper constituted a suggestive *87 one-on-one identification. Defendant also contends that Mr. Ghebreziabher's identification of him using the newspaper photograph was tainted because the victim saw him the night before in the television news story. We find no merit to these arguments.
We first note that the viewing of television news coverage of a defendant's arrest or seeing his picture in a newspaper is not an element of an identification procedure. State v. Daughtery, 563 So.2d 1171, 1174 (La.App. 1 Cir.1990), writ denied, 569 So.2d 980 (La.1990). Moreover, Mr. Ghebreziabher's identification was not initiated by any agency of the state. The victim's sighting of the newspaper article was inadvertent, and he went to the sheriff's office of his own volition. Lieutenant Thurman testified that he did not do anything to influence or coerce the identification. He stated that, "the first moment I saw [Mr. Ghebreziabher] until the conclusion of the interview, he clearly indicated that these two defendants had, in fact, robbed him."
Defendant further complains that the trial court erred in allowing Mr. Ghebreziabher to make an in-court identification. He argues that the procedure was inherently prejudicial, since the victim was robbed by two African-American men, and he was the only African-American man in the courtroom. Defendant also points out that he was dressed in prison attire, and was sitting next to defense counsel.
In State v. Johnson, 343 So.2d 155 (La. 1977), the Louisiana Supreme Court found an in-court identification similar to the one in defendant's case was not unduly suggestive. The Johnson court stated that the mere fact that the defendant was conspicuously seated at the defense table at trial at the time the witness identified him did not suggest that he was guilty of the crime, only that he was charged with its commission. The court further found that an ample opportunity to cross-examine the witness was sufficient to remedy any suggestiveness inherent in the in-court identification process. See also State v. Drew, 360 So.2d 500 (La.1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820; 59 L.Ed.2d 25 (1979).
In the instant case, defense counsel thoroughly cross-examined Mr. Ghebreziabher regarding the in-court identification as well as the newspaper identification. Counsel questioned him extensively about his physical description of the perpetrators. The victim repeatedly expressed his certainty that defendant was one of the robbers, saying that he would never forget defendant's face. Based on the foregoing discussion, we find that the trial court did not abuse its discretion in denying defendant's motion to suppress identification.
Defendant also complains about several of the trial judge's rulings made during the hearing on the motion to suppress identification. As to counts one and two, defendant contends that the trial court's refusal to allow him to test Mr. Ghebreziabher's identification by presenting him with a six person lineup was a violation of his constitutional right of confrontation. Defendant further argues that the trial court erred in refusing to allow him to call Mrs. Ghebreziabher as a witness at the suppression hearing in order to question her about which newspaper articles her husband, Mr. Ghebreziabher, had or had not seen. As to count three, defendant complains that the trial court erred in refusing to allow him to show Agent Aaron Wilkie, a defense witness, a photographic lineup in court. He further argues that the trial court erred in refusing to allow him to call witnesses to impeach Wilkie's identification.
Defendant has previously raised these issues in a writ application filed in this *88 court. Writ Number 02-K-1113. On November 14, 2002, a panel of this court denied writs, stating:
On the showing made, and after a thorough review of the transcripts and documentation, we find no abuse of the trial court's discretion in denying the motion to suppress the identifications. The request for a stay of the trial date is denied.
Defendant thereafter sought review in the Louisiana Supreme Court. That court likewise denied defendant's writ application. State v. Jacobs, 02-2891 (La.1/24/03), 836 So.2d 46.
Under the discretionary principle of "law of the case," an appellate court will generally not reconsider prior rulings made in the same case on subsequent appeal. State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060, 1066, writ denied, 97-2151 (La.3/13/98), 712 So.2d 869. However, the appellate court's denial of supervisory writs does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion on the issue. Reconsideration is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. State v. Davis, 03-488 (La.App. 5 Cir. 11/12/03), 861 So.2d 638, 642, writ denied, 03-3401 (La.4/2/04), 869 So.2d 874.
On appeal, defendant has produced no new arguments or evidence to show that this court's prior disposition was patently erroneous. Therefore, under law of the case, this court does not have to address these issues. Nonetheless, we have once again reviewed the entire record, including the transcripts, and find that arguments raised by defendant relating to the motion to suppress identification are without merit.

MOTION TO SUPPRESS EVIDENCE
Defendant next complains that the trial court erred in denying his motion to suppress the evidence seized at 4012 North Dells Drive in Harvey. Defendant contends that evidence at the suppression hearing showed some items were recovered in the backyard of the residence on October 31, 1996, although police did not obtain a search warrant until November 1, 1996.
Defendant previously raised this issue in a writ application filed in this court. Writ No. 02-K-1112. On November 14, 2002, a panel of this court denied writs, stating:
On the showing made, and after a thorough review of the transcripts and documentation attached to the writ application, we find no abuse of the trial court's discretion in denying the motion to suppress the evidence. The request for a stay of the trial is denied.
Defendant thereafter sought review in the Louisiana Supreme Court. That court denied defendant's writ application. State v. Jacobs, 02-2890 (La.2/21/03), 837 So.2d 628. On appeal, defendant has presented no new arguments or evidence to show that this court's prior disposition was patently erroneous. Therefore, this court does not have to readdress this issue. Nonetheless, we have once again reviewed the entire record, including the transcripts, and find that the arguments raised by defendant relating to the motion to suppress evidence are without merit.

MOTION TO QUASH GRAND AND PETIT JURY VENIRES
Defendant filed several motions in the district court challenging the process for selecting the grand jury and petit jury pools in Jefferson Parish, all of which were *89 denied by the trial court.[3] He now challenges the trial court's rulings on various grounds. By entering guilty pleas on all counts, defendant waived his right to a jury trial. He therefore has no standing to raise arguments regarding petit jury selection. The following analysis pertains only to defendant's grand jury claims.
Under Louisiana law, grand or petit juries shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would cause irreparable injury to the defendant, or unless persons have been systematically excluded from the venire solely upon the basis of race. LSA-C.Cr.P. art. 419 A. The defendant bears the burden of proving grounds for setting aside a jury venire. State v. Edwards, 01-116 (La.App. 5 Cir. 6/27/01), 790 So.2d 109, 115, writ denied, 01-2235 (La.8/30/02), 823 So.2d 935.
The required elements for making a prima facie showing of a Sixth Amendment fair cross-section violation, made applicable to the states under the Fourteenth Amendment, are set forth in Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). In order to establish a prima facie violation of this requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. After the defendant makes a prima facie case, the state has the burden of justifying this infringement by showing that the achievement of a fair cross-section is incompatible with a significant state interest.
In Castaneda v. Partida, 430 U.S. 482, 494-495, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977), the United States Supreme Court enunciated the requirements for an equal protection violation. The defendant must first show that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Secondly, he must show the degree of underrepresentation by comparing the proportion of the group in the whole population to the proportion called to serve as jurors over a significant period of time. A selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the state to rebut that case. Accord, State v. Cosey, 97-2020 (La.11/28/00), 779 So.2d 675, 682, cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001). We will now address defendant's specific arguments.

Thousands of qualified citizens were excluded from grand jury service in defendant's case.
Defendant argues that Jefferson Parish improperly exempts from jury service individuals belonging to professions that are no longer exempt by law. This is evidenced, defendant asserts, by a document entitled "List of Excusal Codes," marked as Defense Exhibit 1 of 11/12/02. In motion hearing testimony, William White, III, the Clerk of Court's Director of Information Services, identified the document *90 as a list of the excusal codes that are, or were, allowed in the system. Defendant complains that several categories of persons, including members of the armed forces, police and firefighters, and medical personnel, are still listed as exempt from jury service on the document, when the law no longer exempts them from service.
Defendant's argument has no substance. Defendant fails to meet his initial burden of showing a prima facie violation of the "fair cross-section" requirement. He does not substantiate the statistics he cites. He does not show that the group alleged to have been excluded is a "distinctive" group in the community, or that it is, in fact, underrepresented in the grand jury pool. Mr. White testified that, at one time, some professionals such as doctors and lawyers were exempted from jury service. However, he was unable to confirm or deny defendant's assertion that those groups are still regularly excluded. Defendant fails to show fraud or irreparable injury under LSA-C.Cr.P. art. 419. He does not say how he might have been prejudiced by an underrepresentation of certain professional groups in the grand jury pool.

The jury pool system was weighted so that some citizens were more likely than others to be selected for jury service.
Defendant argues that, due to the system used for entering potential jurors into the database, some are more likely than others to be selected for jury service. He complains those residents who are older, or who have lived in the parish longer, are likely to be entered more than once in the database. Mr. White testified that, for example, a married woman might be listed in the database under both her married name and her maiden name. If an individual obtains a driver's license under one name, and registers to vote under a variation of that name, he might also be listed in the database more than once.
Defendant fails to make a prima facie showing that he was deprived of his Sixth Amendment right to a grand jury composed of a fair cross-section of the community. He does not show that the parish's system for enrolling prospective jurors excludes a distinctive group. Furthermore, he shows no basis for finding fraud or the systematic exclusion on the basis of race under LSA-C.Cr.P. art. 419 A.

Special and local laws in Jefferson Parish invalidated the grand jury.
Defendant complains that the procedures regulating the grand jury are based on local or "special" laws applicable only in Jefferson Parish, in violation of Article III, § 12 of the Louisiana Constitution.
Defendant specifically refers to LSA-C.Cr.P. art. 409.2 and cites State v. Dilosa, 02-2222 (La.6/27/03), 848 So.2d 546, in support of his claim. We first note that defendant's argument lacks merit because LSA-C.Cr.P. art. 409.2 does not govern grand jury proceedings in Jefferson Parish. By its very terms, the article covers administrative procedures for petit juries in Jefferson Parish. The grand jury procedures in Jefferson Parish are those used statewide. See LSA-C.Cr.P. arts. 411, 413, 414, 415.1, 415.2, and 419. Moreover, defendant's reliance on State v. Dilosa is misplaced. In that case, the Louisiana Supreme Court struck down, as unconstitutional local laws, all or portions of LSA-C.Cr.P. arts. 412, 413, and 414, and LSA-R.S. 15:114, all of which governed Orleans Parish grand jury proceedings.

Felons, who have obtained first offender pardons, were improperly excluded from the grand jury pool.
Defendant complains that convicted felons, even those receiving first offender *91 pardons, are excluded from grand jury service. LSA-C.Cr.P. art. 401 A(5) provides that in order to qualify as a juror, a person must "[n]ot be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned." Defendant cites Article I, § 20 of the Louisiana Constitution, which provides, in part: "Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense." Defendant argues that the right to serve on a jury is one of the restored rights contemplated by that constitutional provision, and that LSA-C.Cr.P. art. 401 A(5) is, therefore, unconstitutional. Defendant's argument is without merit.
Restoration of full rights of citizenship upon release from federal or state supervision under Article I, § 20 does not restore a convict's right to sit on a jury. State v. Selmon, 343 So.2d 720, 721-722 (La.1977); State v. Haynes, 514 So.2d 1206, 1211 (La.App. 2 Cir.1987). Only basic rights such as the right to vote, work, or hold public office are restored. State v. Adams, 355 So.2d 917, 922 (La. 1978); State v. Haynes, supra.
Article V, § 33(A) of the Louisiana Constitution provides: "A citizen of the state who has reached the age of majority is eligible to serve as a juror within the parish in which he is domiciled. The legislature may provide additional qualifications." The legislature was well within its constitutional authority in instituting the qualifications in LSA-C.Cr.P. art. 401.
Based on the foregoing discussion, defendant was not prejudiced by the trial court's denial of his motions to quash the grand jury indictment based on the composition of the grand jury pool. Accordingly, the arguments raised by defendant relating to the grand jury venire are without merit.

LACK OF JURISDICTION
Defendant contends that the district court lacked jurisdiction over his case, as he was sixteen and a juvenile at the time of the instant offenses.
Article V, § 19 of the Louisiana Constitution provides that juveniles are generally entitled to the protections of special juvenile procedures. However, the Louisiana Constitution authorizes the legislature to exclude juveniles accused of certain enumerated offenses from the jurisdiction of the juvenile courts. The legislature is also permitted to lower the maximum ages of persons to whom such procedures will apply. See State v. Hamilton, 96-0107 (La.7/2/96), 676 So.2d 1081, 1082.
The jurisdictional provisions authorized by Article V, § 19 of the constitution are found in Title III of the Louisiana Children's Code. LSA-Ch.C. art. 303 gives juvenile courts exclusive jurisdiction over children and minors except where the child (1) is subject to the jurisdiction of the criminal courts under the provisions of LSA-Ch.C. art. 305 et seq.; or (2) has been transferred by the juvenile court for criminal prosecution as an adult under LSA-Ch.C. art. 857 et seq.
LSA-Ch.C. art. 305 gives the criminal courts jurisdiction over juveniles charged with the most serious offenses. Subpart B of the article provides that children age fifteen and older accused of certain enumerated offenses are subject to the exclusive jurisdiction of juvenile court until either (1) an indictment charging one of the enumerated offenses is returned; or (2) the juvenile court holds a continued custody hearing and finds probable cause that the child has committed one of the enumerated offenses, and a bill of information charging one of those offenses is filed.
Armed robbery is one of the enumerated offenses under LSA-Ch.C. art. *92 305 B(2). In defendant's case, therefore, exclusive jurisdiction vested in the district court by operation of law when the grand jury issued the indictment. See State v. Washington, 00-1055 (La.App. 4 Cir. 7/18/01), 793 So.2d 376, 382. Defendant argues he was entitled to a continued custody hearing in juvenile court under LSA-Ch.C. art. 305. Since defendant was indicted, however, he was not entitled to a hearing to determine probable cause. LSA-Ch.C. art. 305 B(1)(a). Based on the foregoing discussion, the district court had jurisdiction over this matter. This argument is likewise without merit.[4]

CONSTITUTIONALITY OF LSA-C.CR.P. ART. 782
In his final argument, defendant asserts that LSA-C.Cr.P. art. 782 is unconstitutional, in that it requires the agreement of only ten out of twelve jurors for a verdict in the trial of a hard felony. Defendant contends that due process requires a unanimous verdict in a felony case. Considering that defendant entered guilty pleas to the instant charges, and thereby waived his right to a jury trial, he has no standing to raise the issue on appeal. Moreover, we note that the validity of nonunanimous jury verdicts for twelve person juries has consistently been upheld by the courts. See State v. Belgard, 410 So.2d 720, 726 (La.1982) and State v. Shanks, 97-1885 (La.App. 1 Cir. 6/29/98), 715 So.2d 157, 164. Accordingly, this argument is likewise without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent according to LSA-C.Cr.P. art. 920. Our review reveals no errors which require corrective action.
Accordingly, for the reasons set forth herein, we affirm defendant's convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] In his appellate brief, defendant lists sixteen assignments of error; however, he fails to brief some of these assignments. Assigned errors that are neither briefed nor argued are considered abandoned on appeal. Uniform Rules, Courts of Appeal, Rule 2-12.4. Accordingly, this opinion will address only those assignments that have been properly briefed by defendant.
[2] On cross-examination of Mr. Ghebreziabher, defendant produced Defense Exhibit 4, a videotape containing segments from three WWL-TV news broadcasts. The first is dated October 31, 1996, and contains information about the murders and armed robberies. The second is dated November 2, 1996, and contains details about the murders. The third is dated November 3, 1996, and it contains information about the arrests of Bridgewater and defendant on murder charges. Mr. Ghebreziabher identified the November 2, 1996 broadcast as the one he saw.
[3] Defendant has previously filed writ applications in this court challenging the denial of the motions to quash the jury venires; however, the writ dispositions did not reach the merits of the arguments that defendant is raising on appeal.
[4] It is noted that defendant, in his discussion of this argument, attempts to assign as error the constitutional excessiveness of sentence. However, stating an assignment of error in brief without argument or citation of authority does not constitute briefing. State v. Fernandez, 03-987 (La.App. 5 Cir. 12/30/03), 864 So.2d 764, 770. Since defendant failed to properly raise the issue of excessive sentence, this court need not address it.