MARION F. EDWARDS, Judge.
[2In this criminal matter defendant, Ke-darius Lathers (“Lathers”), seeks review of the trial court’s denial of motions to suppress his statement and identification. For reasons that follow, we find the trial court’s rulings were correct, and we affirm Lathers’ conviction and sentence.
The State filed a bill of information charging Lathers with armed robbery in violation of La. R.S. 14:64, while armed with a handgun in violation of La.R.S. 14:64.3. Lathers pled not guilty and filed motions to suppress his statement and identification. When those motions were denied, Lathers filed a supervisory writ in this Court seeking review of the denials. Upon review, this Court denied the writ application.[1]
The State amended the bill of information to remove the firearms enhancement charge of La. R.S. 14:64.3. Lathers withdrew his plea of not guilty | sand entered a plea of guilty to armed robbery, reserving his right to appeal the suppression rulings pursuant to State v. Crosby.[2] Upon acceptance of the guilty plea by the trial court, Lathers was sentenced to serve twelve years at hard labor without benefit of parole, probation, or suspension of sentence. This appeal follows.
The first issue for our consideration is whether Lathers has a right of review of the denial of the motions to suppress the statement and the identification since these rulings were reviewed by this Court in a pretrial writ application. Lathers ala-gues he is not precluded from raising these matters on appeal. The State urges this Court to apply the “law of the case” doctrine because the issues on appeal are the same issues previously reviewed and denied by this Court in the pretrial writ application. The State also argues that, since Lathers pled guilty and the matter did not proceed to trial on the merits, there is no new evidence or testimony since this Court’s last ruling.
The law of the case doctrine is discretionary. The denial of a supervisory writ application does not bar reeonsidera *1071 tion of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion on the issue.[3] We note that the decision by this Court in the pretrial ruling created some disparity of opinion by the panel of this Court. Further, this Court’s ruling in the pretrial writ was made without benefit of all the information that later became available. In the record before us in this appeal, we now have exhibits from the suppression hearing that were not included in the writ application, including the photographic lineup. Accordingly, in the interest of justice, we will consider the rulings of which Lathers complains on appeal.

\ ¿FACTS

Because Lathers pled guilty to armed robbery and there was no trial on the merits, the facts of the crime contained in the record are minimal. It is clear from the record that this crime was a car-jacking that occurred in Kenner, Louisiana. The victim testified at the suppression hearings. She stated that she was carjacked at gun point on August 30, 2007. She identified Lathers as the perpetrator from a photographic lineup of six possible suspects. The victim testified that she recognized Lathers’ photo and marked the back of the photo lineup with her signature.
Lathers was developed as a suspect when another individual was found in possession of the stolen vehicle. Information obtained by the investigating officer led police to Lathers, who had a criminal history that included active probation for truancy and who fit the description of the perpetrator.

LAW AND ANALYSIS

In the first assignment of error, Lathers argues the trial court erred in failing to suppress his statement because he was fifteen years old at the time of his arrest, and he made a statement to police prior to his mother’s arrival. He contends the State did not prove his confession was voluntary because he signed the form indicating that he would be allowed to talk to his mother, but the police obtained a statement in her absence. He argues that, based on the totality of circumstances, his statement should have been suppressed because the State failed to meet its burden of proving defendant voluntarily waived his right to counsel and his right against self-incrimination.
The State responds that the trial court’s pretrial ruling on the suppression of his statement was correct and should not be disturbed on appeal. It argues Lathers’ | .^statement was knowingly and voluntarily made under the totality of the circumstances.
At the hearing on a motion to suppress a statement, the State bears the burden of proving the admissibility of the purported statement.[4] Before introducing a defendant’s statement made during a custodial interrogation, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[5] rights, and that the statement was made freely and voluntarily, and not under the influence of fear, intimidation, menaces, threats, inducement or promises.[6]
*1072 The constitutional privilege against self-incrimination and the right to counsel applies equally to juveniles and adults.[7] The determination of whether a waiver of constitutional rights is knowingly and voluntarily made is on a case-by-case basis and such a determination rests upon the “totality of the circumstances.”[8] In State v. Fernandez,[9] the Louisiana Supreme Court has held that the confession of an accused of any age is valid only if it was given knowingly and voluntarily. In addition to age, factors to be considered in assessing the totality of the circumstances include the individual’s experience, education, background, intelligence and capacity to understand the warning given at the time of the waiver.[10] In setting forth the factors for consideration in assessing the totality of the circumstances, regardless of whether the accused is a juvenile, the Louisiana Supreme Court overruled prior jurisprudence in State in Interest of Dina[11] that |(,required the State to affirmatively show that the juvenile engaged in a meaningful consultation with an attorney or an informed parent, guardian, or other concerned adult before the juvenile waived his constitutional rights. The Fernandez Court held that prophylactic rules in Diuo were not constitutionally or statutorily required. Thus, the absence of a parent is no longer dispositive of an inquiry into whether the juvenile defendant’s confession is voluntary.
We recognize that, under the current pronouncement of Fernandez, the State is no longer required to affirmatively show that the juvenile engaged in a meaningful consultation with an attorney or an informed parent, guardian, or other concerned adult before the juvenile waived his constitutional rights. However, we believe that the State must be mindful of the constitutional privilege against self-incrimination and the right to counsel afforded juveniles in criminal investigations. These privileges are not to be taken lightly and serious efforts must be made to preserve those rights in criminal matters in which the accused is a juvenile.
In the current matter, this Court must consider the Fernandez factors to decide whether, under the totality of the circumstances, Lathers’ statement was knowing and voluntary.
Defendant was fifteen years old at the time he confessed. At the suppression hearing, both Detective Charlotte Synigal (“Detective Synigal”) and Detective Brian MacGregor testified that they made numerous attempts to locate Lathers’ guai“d-ian. They called Lathers’ residence several times. Detective Synigal explained there was only a six-hour time span to process a juvenile. Once the police realized that they were probably not going to be able to contact Lathers’ mother, they decided to proceed and talk to Lathers.
At 9:00 p.m., Detective Synigal explained the juvenile advice of rights form to Lathers. This form contained Lathers’ constitutional rights and also listed the 17charges about which the police desired to question him. According to Detective Synigal, Lathers signed the form, acknowledging that he understood his rights. Detective Synigal believed Lathers was familiar with the court system *1073 because he was on active probation at the time of his arrest and had been advised of the same rights dui'ing previous arrests. Detective Synigal testified that she went through the entire form with Lathers line by line. This process took nine minutes. When Detective Synigal questioned Lathers about the incident, he put his head down, and said, “[Y]eah, I did it.” Detective Synigal testified that she believed Lathers knowingly and intelligently waived his rights and that he was not threatened or coerced into making a statement.
Lathers’ mother, Tonuia Howard (“Howard”), arrived a little after midnight, after the police went to Lathers’ residence and made contact with an individual at the house. Howard had been in LaPlace. The police reviewed the form again with Howard, and she signed the juvenile advice of rights form. At the hearing, Howard testified that she asked the officers how they were able to question her son in her absence and said she did not allow any further questioning of him. Howard testified that Lathers had been arrested before for a curfew violation when he was eleven or twelve years old and that he had also been arrested for fighting.
At the time of Lathers’ statement, he was a few months shy of being sixteen years old. The Louisiana Supreme Court has previously recognized that there are sixteen year olds whose knowledge of and ability to comprehend their legal rights surpass the knowledge and comprehension of many who are older.[12]
Lathers had an eighth or ninth grade education, and the circumstances do not appear to indicate that he was unable to understand the nature of his actions. Lathers’ mother said she had no doubt defendant could read and that he would Ighave understood the seriousness of the allegations against him. She testified that the instant matter was the third incident where defendant had been advised of his rights. Lathers was no stranger to the judicial system because he had been previously arrested, and he was on probation at the time of his arrest. Prior criminal history, even for minor offenses, serves to expose a defendant to the criminal justice system and the process for advisement of rights.[13]
Further, it does not appear Lathers was under duress. Detective Synigal testified he was not crying when filling out the form. Lathers could have said that he did not want to speak to the police without talking to his mother, but Detective Syni-gal testified that he never said he wanted to speak to his mother, that he wanted a lawyer, or that he did not want to speak.
The trial court pointed out that Detective Synigal, who advised Lathers of his rights, is an African-American woman of small stature with a calm, not-intimidating demeanor. After considering the totality of the circumstances, the trial court denied the motion to suppress the statement.
The admissibility of a statement or confession is first a question for the trial court, and its conclusions on the credibility and weight of testimony relating to volun-tariness of a statement will not be overturned on appeal unless unsupported by the evidence.[14] Based on the totality of *1074 the circumstances, the trial court found the State established that Lathers’ confession was given knowingly and voluntarily. Upon consideration of the suppression hearing transcript and exhibits contained in the record, we find support for the denial of the motion to suppress the statement.
This assignment of error is without merit.
|aIn his second assignment, Lathers argues the trial court erred in failing to suppress the identification by preventing counsel to ask the victim questions concerning the reliability of her identification procedure.
The State responds that, because the trial court found the witness credible and the identification procedure not suggestive, the court was not required to determine whether the procedure gave rise to a substantial likelihood of irreparable misidenti-fication.
The defense attorney sought to question the victim about the details of the crime, the length of time between the crime and the identification, and whether she provided a description of the perpetrator to the police. Defendant claimed these questions were relevant to the reliability of the victim’s identification. The trial judge sustained the State’s objections, reasoning that the questions related to reliability and the weight of the evidence. The trial judge denied the suppression motion, stating that, after viewing the lineup, he found that the identification was not suggestive and that the victim was a credible witness.
Generally, a defendant has the burden of proof on a motion to suppress an out-of-court identification.[15] In order to suppress an identification, a defendant must first prove that the identification procedure was suggestive.[16] An identification procedure is considered suggestive if the attention of the witness is unduly focused on the defendant during the procedure.[17] Even if an identification process is suggestive, the defendant must also show there was a substantial likelihood of misidentifi-cation as a result of the identification procedure.[18]
|10Under Manson v. Brathwaite,[19] the factors that courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of mis-identification include: the witness’ opportunity to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.[20]
However, in the absence of the defendant proving the suggestiveness of the out-of-court identification, a Manson analysis is not necessary.[21] Based on the foregoing jurisprudence, a defendant must prove an identification is suggestive before *1075 the factors to evaluate the suggestive identification become relevant. In the present case, the victim testified that the lineup procedure was not suggestive. She explained the photographic lineup was placed in front of her, the police stepped back, and then asked her if she recognized anyone. She testified she knew exactly who the perpetrator was when she saw the photo of Lathers and quickly identified his photo. She stated that she was not threatened by the police.
The trial judge found that the victim was credible and the identification procedure was not suggestive. The trial court judge believed the testimony that the victim was not threatened or otherwise coerced into selecting Lathers’ photo. When a trial judge makes a finding of fact based on the credibility of a witness, a reviewing court owes that determination great deference and may not overturn it in the absence of manifest error.[22] The trial judge also looked at the lineup and considered the photographs, noting that they all had certain characteristics that were the same. The judge stated specifically that the hair and the complexions | uwere “kind of the same.” He stated, “There’s nothing that would separate the other five from the defendant in this particular case and then make him noteworthy as the one that she should select.”
Nothing in the record indicates the trial judge erred in finding the identification was not suggestive. In the absence of showing a procedure is suggestive, no further analysis is required. As such, we find no error in the trial judge’s decision to exclude testimony relating to the reliability of the victim’s identification of Lathers.
Lathers requests an error patent review. However, this Court routinely reviews the record for errors patent regardless of whether defendant makes such a request.[23] The review reveals there are no errors patent in this case.
For the foregoing reasons, the conviction and sentence are affirmed.

AFFIRMED.

JASMINE, J., dissents with reasons.

. In State v. Lathers, 08-K-626 (La.App. 5 Cir. 8/8/08), a panel on this Court rendered a unanimous decision denying the writ application as to the motion to suppress the identification. In a split decision, with one judge dissenting, the ruling denying the motion to suppress the statement was also denied.

. 338 So.2d 584 (La.1976).

. State v. Jacobs, 04-1219 (La.App. 5 Cir. 5/31/05), 904 So.2d 82, writ denied, 05-2072 (La.4/28/06), 927 So.2d 282, cert. denied, 549 U.S. 956, 127 S.Ct. 385, 166 L.Ed.2d 276 (2006).

. La.C.Cr.P. art. 703.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. State v. Rose, 05-770 (La.App. 5 Cir. 2/27/06), 924 So.2d 1107, 1111, writ denied, 06-1286 (La.11/22/06), 942 So.2d 554 (citing La. R.S. 15:451).

. State v. Terrick, 03-515 (La.App. 5 Cir. 9/30/03), 857 So.2d 1153, 1159, writ denied, 03-3272 (La.3/26/04), 871 So.2d 346.

. State ex rel. A.B., 07-907 (La.App. 5 Cir. 3/25/08), 983 So.2d 934, 939 (quotation omitted).

. State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485.

. Id.

. State in Interest of Dino, 359 So.2d 586, 594 (La.1978), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978).

. Terrick, 03-515 at 10, 857 So.2d at 1159 (citing State v. Edwards, 406 So.2d 1331, 1340 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982)).

. See, Terrick, 03-515 at 12, 857 So.2d at 1160; State v. James, 04-0878, p. 22 (La.App. 4 Cir. 2/23/05), 897 So.2d 821, 833, writ denied, 05-1173 (La.1/27/06), 922 So.2d 542.

. Terrick, 03-515 at 10-11, 857 So.2d at 1159-60.

. State v. Higgins, 03-1980, p. 19 (La.4/1/05), 898 So.2d 1219, 1232, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005) (citing La.C.Cr.P. art. 703(D)).

. Id.

. State v. Robinson, 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 865, writ denied, 08-1086 (La. 12/19/08), 996 So.2d 1132 (citing State v. Broadway, 96-2659 (La. 10/19/99), 753 So.2d 801, 812, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000)).

. Higgins, 03-1980, 898 So.2d at 1233.

. 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

. Higgins, 03-1980, 898 So.2d at 1233.

. See, State v. Medford, 489 So.2d 957, 961 (La.App. 5 Cir.1986).

. See, Higgins, 03-1980 at 20-21, 898 So.2d at 1233.

. See, La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).