STATE OF LOUISIANA
v.
TREMAYNE SIMMS
No. 2009 KA 0977.
Court of Appeals of Louisiana, First Circuit.
December 23, 2009.
HILLAR C. MOORE, III District Attorney ALLISON M. RUTZEN Assistant District Attorney Baton Rouge, LA
JOHN H. CRAFT, Tremayne Simms, Louisiana Appellate Project, New Orleans, LA Attorney for Defendant-Appellant.
Before: PARRO, KUHN, AND McDONALD, JJ.
PARRO, J.
The defendant, Tremayne Simms, was charged by grand jury indictment with manslaughter, a violation of LSA-R.S. 14:31. He pled not guilty. Following a jury trial, the defendant was convicted as charged. The defendant timely moved for post-verdict judgment of acquittal and for a new trial; however, the trial court denied both motions. Subsequently, the defendant was sentenced to twenty years of imprisonment at hard labor. The defendant now appeals, urging two assignments of error as follows:
1. The trial court erred in denying the post-verdict motion for judgment of acquittal because the evidence was not such that any rational trier of fact could have found beyond a reasonable doubt that the killing was not justifiable because it was committed in self-defense.
2. The trial court erred in denying the defense's motion to quash on the grounds of the unconstitutionality of any grand or petit jury selected in conformity with Article 401(A)(5) of the Code of Criminal Procedure which conflicts with Article I, § 20 of the Louisiana Constitution of 1974.
Finding no merit in the assigned errors, we affirm.

FACTS
On the afternoon of July 3, 2007, Deputy Jared, Neyland with the East Baton Rouge Parish Sheriff's Office was attending a meeting at the Scotlandville substation when he heard a commotion in the lobby. Deputy Neyland entered the lobby and found Mongail Long (the victim) leaning against the counter, bleeding profusely. He had sustained stab wounds to his nose, upper chest, middle chest, and upper left leg. Several unidentified individuals advised Deputy Neyland that the victim had just been stabbed by the defendant during a fight. They advised that the fight occurred at a nearby residence and that the defendant was still present in the area. During this discussion, the victim collapsed onto the floor.
Immediately thereafter, Deputy Neyland observed the defendant running down the street outside the substation. Deputy Neyland chased the defendant and ordered him to stop. The defendant refused to comply. He continued to run and eventually stopped behind a nearby fire station because he had no further outlet. As Deputy Neyland attempted to subdue the defendant and place handcuffs on him, the defendant continued to pull away. In response to the defendant's continued efforts to resist, he was sprayed in the facial area with Freeze Plus P control spray. Then, the defendant was successfully subdued.
Meanwhile, the victim was transported to Earl K. Long Medical Center where he later died. An autopsy later revealed that two major arteries were severed as a result of the stabbing, causing the victim to bleed to death. The defendant was arrested for manslaughter. In response to police questioning, the defendant eventually admitted to stabbing the victim and claimed he did so in self-defense.

SUFFICIENCY OF THE EVIDENCE
In his first assignment of error, the defendant contends that the evidence presented at the trial was insufficient to support the manslaughter conviction. Specifically, he asserts the state failed to prove that he did not act in self-defense when he stabbed the victim during the physical altercation.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). When circumstantial evidence is used to prove the commission of an offense, LSA-R.S. 15:438 requires that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. See State v. Wright, 98-0601 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 486, writs denied. 99-0802 (La. 10/29/99), 748 So.2d 1157, and 00-0895 (La. 11/17/00), 773 So.2d 732. This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La. 10/21/97), 701 So.2d 922, 930, cert, denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
As previously noted, the defendant was charged with, and convicted of, manslaughter. Louisiana Revised Statute 14:31 defines manslaughter, in pertinent part, as follows:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person[.]
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Since specific intent is a state of mind, it need not be proved as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126,1127 (La. 1982).
In this case, the defendant does not deny that he intentionally stabbed the victim. He insists, however, that the homicide was justifiable because he acted in selfdefense to avoid further serious bodily injury to himself by the victim during the fight. The defendant asserts that his actions were solely in response to the victim's actions of repeatedly beating him while he was on the ground, struggling to get up. He claims the victim struck him with both hands, one of which was covered with a cast. He claims the victim showed no intent to stop beating him until he used the knife that fell from his pants during the beating. The defendant claims he believed that he was in imminent danger of losing his life or receiving great bodily injury.
The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. LSA-R.S. 14:18. At the time of the offense in question, LSA-R.S. 14:20 provided, in pertinent part:
A homicide is justifiable:
(l)When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
When the defendant in a homicide prosecution claims self-defense, the state must prove beyond a reasonable doubt that the homicide was not committed in selfdefense. State v. Williams, 01-0944 (La. App. 1st Cir. 12/28/01), 804 So.2d 932, 939, writ denied. 02-0399 (La. 2/14/03), 836 So.2d 135. For the defendant's actions to be justified, the force used must be reasonable under the circumstances and apparently necessary to prevent an imminent assault. State v. Nelson, 34,077 (La. App. 2nd Cir. 12/6/00), 775 So.2d 579, 584. On appeal, the relevant inquiry is whether or not, after viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found beyond a reasonable doubt that the defendant did not act in self-defense. State v. Fisher, 95-0430 (La. App. 1st Cir. 5/10/96), 673 So.2d 721, 723, writ denied. 96-1412 (La. 11/1/96), 681 So.2d 1259.
At the trial, since the defendant did not testify, the circumstances surrounding the fatal incident were provided only by eyewitnesses Brandon Tumblin and Michelle Tumblin.[1] Brandon Tumblin testified that on the date of the stabbing, the defendant and the victim were both at the residence of Tammy Tumblin (Brandon's aunt) on Lewis Street. The defendant was already there when the victim, Brandon, and Tammy returned from completing errands.[2] According to Brandon, the defendant and the victim eventually became involved in a verbal altercation regarding something that allegedly occurred between them the previous day.[3] Despite Tammy's instruction that they "leave it alone," the verbal altercation continued. When the victim became upset at the defendant "disrespecting him," he entered Tammy's residence and removed his shirt and watch, as if preparing to fight. When the victim returned, the defendant approached the porch where the victim was standing. The verbal altercation continued. It eventually escalated and became physical when the victim struck the defendant in the face, causing him to fall. The victim continued to strike at the defendant as he was backed up against the side of the porch. By this time, the defendant was on his knees covering his face. During the encounter, a knife fell from the defendant's pocket. The defendant picked up the knife and stabbed the victim in the leg. According to Brandon, at this point, the victim backed away from the defendant, all the way to the other side of the porch. Now able to get up from the ground, the defendant rose and stabbed the victim in the chest. The victim ran off the porch and over to the Scotlandville substation to get help. According to Brandon, the victim was still hitting the defendant when the knife fell. However, he did not hit the defendant again after the initial stabbing in the leg. Instead the victim backed away to avoid being stabbed again.
Michelle Tumblin, Brandon's sister, testified that she also witnessed the fight. Michelle's testimony about the details of the incident was somewhat at odds with Brandon's testimony. Like Brandon, Michelle also testified that the victim hit the defendant first, causing him to fall to the ground. However, Michelle claimed the victim continuously beat the defendant as he attempted to get up. She explained that the knife fell from the defendant's pocket and he grabbed it. Michelle claimed she momentarily turned her back to walk off of the porch, and when she turned back, she observed the defendant stab the victim in the upper chest. Michelle did not see when the other stab wounds were inflicted. She claimed there was never a period of time, before the defendant stabbed him in the chest, when the victim stopped beating the defendant. There was never a pause or break in the fight.
The guilty verdict returned in this case indicates that the jury either rejected the defendant's self-defense claim or concluded that the homicide was not necessary to preserve the defendant's life. See LSA-R.S. 14:20(1) and (2). Even if the jury believed Michelle Tumblin's account of the events, they could have reasonably found that the defendant was no longer defending himself when the fatal blow was inflicted. Although Michelle's account of the incident reflected that the victim continuously and repeatedly struck the victim as he was down on the ground and he never stopped striking the defendant before being stabbed in the chest, she also testified that she momentarily turned away from the fight. When considering Michelle's testimony in conjunction with that of Brandon Tumblin, it is reasonable to conclude that while Michelle's back was turned, the defendant stabbed the victim in his leg, causing the victim to discontinue his attack on the defendant and briefly back away. This is why, by the time Michelle turned back around, the defendant was up on his feet. Thus, a rational trier of fact could have reasonably concluded that the fatal force utilized by the defendant was not necessary under the circumstances. The defendant's actions of repeatedly stabbing the wounded victim were not needed to save the defendant's life. Moreover, the defendant's actions immediately after the stabbing, i.e., failing to report the incident, running from the police, and initially being dishonest with the arresting officers, are all inconsistent with a theory of self-defense.
Upon our review of the record in this case, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have concluded that the defendant did not act in self-defense in killing the victim. This assignment of error lacks merit.

DENIAL OF MOTION TO QUASH: CONSTITUTIONALITY OF CODE OF CRIMINAL PROCEDURE ARTICLE 401(A)(5)
In his second assignment of error, the defendant complains that convicted felons are excluded from jury service. He argues that LSA-C.Cr.P. art. 401(A)(5) is unconstitutional as it conflicts directly with LSA-Const. art. I, § 20 by excluding from jury service convicted felons whose citizenship rights have been restored.
Louisiana Code of Criminal Procedure article 401(A)(5) provides that in order to qualify to serve as a juror, a person must "[n]ot be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned." Defendant cites Article I, § 20 of the Louisiana Constitution, which provides, in part: "Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense." Defendant argues that the right to serve on a jury is one of the restored rights contemplated by that constitutional provision, and that LSA-C.Cr.P. art. 401(A)(5) is, therefore, unconstitutional. We find no merit in the defendant's argument.
Restoration of full rights of citizenship upon release from federal or state supervision under Article I, § 20 does not restore a convicted felon's right to sit on a jury. See State v. Selmon, 343 So.2d 720, 721-22 (La. 1977); State v. Haynes, 514 So.2d 1206, 1211 (La. App. 2nd Cir. 1987). Only basic rights such as the right to vote, work, or hold public office are restored. State v. Adams, 355 So.2d 917, 922 (La. 1978).
Article V, § 33(A) of the Louisiana Constitution provides: "A citizen of the state who has reached the age of majority is eligible to serve as a juror within the parish in which he is domiciled. The legislature may provide additional qualifications." The legislature was well within its constitutional authority in instituting the qualifications in LSA-C.Cr.P. art. 401. See State v. Jacobs, 04-1219 (La. App. 5th Cir. 5/31/05), 904 So.2d 82, 91, writ denied. 05-2072 (La. 4/28/06), 927 So.2d 282, cert, denied. 549 U.S. 956, 127 S.Ct. 385, 166 L.Ed.2d 276 (2006).
Based on the foregoing discussion, we find no error in the trial court's denial of the defendant's motion to quash the grand jury indictment. The argument raised by the defendant, challenging the constitutionality of the jury service criteria, is without merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Tammy Tumblin also testified. However, she admitted that she was inside her home when the fight occurred. The defendant and the victim were both running away when she came outside.
[2] Tammy Tumblin is disabled, and the victim routinely drove for her and assisted her with errands.
[3] The details about the incident were not developed at the trial. Testimony established that this incident was the source of the friction between the defendant and the victim.