STEPHEN J. WINDHORST, Judge.
^Defendant, Tavares Harrell, pled guilty to two counts of armed robbery (La. R.S. 14:64) and one count of aggravated second degree battery (La. R.S. 14:34.7) pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) and State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the denials of his motions to suppress. The trial court sentenced defendant, on each armed robbery count, to ten years imprisonment at hard labor without benefit of parole, pro *746 bation, or suspension of sentence, and on the aggravated second degree battery count, to ten years imprisonment at hard labor, to be served concurrently. This appeal followed.

FACTS

Because this case was resolved without a trial, the facts of the charged crimes are not fully developed in the record, but are presented in the bill of information as follows:
“On or about [January 4, 2011], [defendant] ... did rob Juan Perez while armed with a dangerous weapon, to wit: a .380 Caliber Grendel Semi-Automatic | sPistoI, wherein the wallet, a Louisiana drivers (sic) license and a social security card of Juan Perez were taken by force or intimidation ...”
“On or about [January 4, 2011], [defendant] ... did rob Hector Itzep-Vincente while armed with a dangerous weapon, to wit: a small black Semi-Automatic pistol, wherein the wallet, a Chase Visa Debit card in the name of Hector M. Itzep and $15.00 cash were taken by force or intimidation ...”
“On or about [January 4, 2011], [defendant] ... did commit aggravated second degree battery, with a dangerous weapon, by intentionally inflicting serious bodily injury upon Matthew Aittama with a firearm, specifically a small black Grendel Semi-Automatic pistol, by shooting Matthew Aittama in the buttocks ...”

DISCUSSION

In defendant’s sole assignment of error, he argues that the trial court erred in denying his motion to suppress his statement. He specifically contends that because he was not allowed to speak with a parent prior to his statement, the statement was neither knowing nor voluntary.
The following was adduced at the motion to suppress hearing.
Pursuant to an investigation regarding alleged crimes committed by defendant, Officer Nicholas Engler of the Kenner Police Department, around 12:00 A.M. on January 5, 2011, displayed a photographic lineup to Mr. Matthew Aittama while Mr. Aittama was in the hospital, the victim of a shooting that had occurred several hours earlier. Mr. Aittama identified defendant from the lineup as the person who had shot him.
After this identification was obtained, Detective George Hoffman of the Kenner Police Department sought and was granted an arrest warrant for defendant and a search warrant for defendant’s residence located at 2609 Phoenix Street in Kenner. Detective Hoffman testified that at the time the warrant was issued, he | intended to obtain a statement from defendant. The warrant was executed around 6:00 A.M. on January 5, 2011, at which time Detective Hoffman and Officer Engler made entry into the residence with U.S. Marshals. The U.S. Marshals arrested defendant and defendant’s mother, who had an outstanding attachment for her arrest. At this time, defendant was neither advised of his rights nor questioned. Defendant and his mother were transported to the Kenner Police Department.
Upon arriving at the Department, defendant was brought to an interview room on the third floor, while his mother remained in custody on the first floor. Defendant’s mother was not given the opportunity to talk to her son while at the Department. Defendant was not asked if he wanted to talk to his mother or father. Detective Hoffman told him: ‘Your mom’s downstairs. Do you understand your rights? I’d like to take a statement from you.” Defendant responded: “I know my rights.”
At 9:11 A.M., Detective Hoffman, along with Officer Engler, presented defendant *747 with the Juvenile Advice of Rights Form. The detective orally recited defendant’s rights to him. After each right, he asked defendant if he understood, and defendant said, “Yes.” At the conclusion of reading defendant his rights, the detective told him: “Go ahead and read these. Make sure you understand everything on here, because your parent’s not present.” Defendant replied: “Okay.” Defendant then read each right, and, on his own, initialed next to each one, except the last, the sixth right. He signed his name and indicated he was willing to give a statement. Defendant is able to read and write, and, at the time, was in the ninth grade.
The sixth right, which defendant did not initial, provides: “Before you decide whether you want a lawyer, and whether you are willing to answer questions, you will be given an opportunity to discuss this with _ | s(Parent/Concerned Adult).” Next to this sixth right, prior to defendant initialing and signing the form, Detective Hoffman had written an “X,” and, in the blank for the name of the parent/concerned adult, wrote “N/A.” At the bottom of the form, in another blank for the signature of a parent/concerned adult, Officer Engler affixed his signature indicating his presence as a witness. A taped statement was subsequently obtained. It is this statement defendant sought to suppress.
At the suppression hearing, Detective Hoffman explained that defendant’s mother was not given the opportunity to talk with her son because she was in custody, and he felt that she might be coerced into convincing her son to speak in order to gain some benefit to herself. Detective Hoffman further stated that defendant had been “in and out of the system” and that defendant was aware of what was taking place at the time. Defendant had previously been adjudicated in Juvenile Court, where the trial judge “actually sits down and explains each one of their Rights again to each one of — for each one of the Rights for that individual child.” Detective Hoffman testified that defendant was very cooperative during the interview, that he understood his rights, and that he willingly gave his statement.
Ms. Harrell, defendant’s mother, testified that if she had been given the option, she would not have allowed her son to talk to the police without an attorney being present.
During the motion to suppress the statement, the trial court expressed her displeasure concerning the police officers’ actions. She stated that if the issue before her was whether the officers were reasonable in failing to produce defendant’s mother, her ruling would be in defendant’s favor because she felt it was clear that the officers were not reasonable. She went on to further state that the reasonableness of the officer’s failure to produce the mother was not a factor to be considered. She then went on to state that the fact that a parent’s absence was | (-.unreasonable was not dispositive of the issue of whether the juvenile’s confession was free and voluntary. After considering all the factors, the trial judge found that the totality of the circumstances in this case established that defendant did make a knowing, intelligent, free, and voluntary waiver of his rights.
Trial courts are vested with great discretion when ruling on a motion to suppress. State v. Smith, 11-638 (La.App. 5 Cir. 3/13/12), 90 So.3d 1114, 1120 (citation omitted). Thus, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. Id.
At the hearing on a motion to suppress a statement, the State bears the burden of proving the admissibility of the purported statement. State v. Lathers, *748 09-20 (La.App. 5 Cir. 5/26/09) 15 So.3d 1068, 1071, writ denied, 09-1341 (La.2/12/10), 27 So.3d 841. Thus, before introducing a defendant’s statement made during a custodial interrogation, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[1] rights, and that the statement was made freely and voluntarily, and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. Id.
The constitutional privilege against self-incrimination and the right to counsel applies equally to juveniles and adults. Lathers, supra at 1072. The determination of whether a waiver of constitutional rights is knowingly and voluntarily made is on a case-by-case basis and such a determination rests upon the “totality of the circumstances.” Id. In State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485, 487, the Louisiana Supreme Court held that the confession of an accused of any age is valid only if it was given knowingly and voluntarily. In addition to age, factors to be considered in assessing the totality of the circumstances include the individual’s experience, education, background, | -^intelligence, and capacity to understand the warning given at the time of the waiver. Lathers, supra at 1072. In setting forth the factors for consideration in assessing the totality of the circumstances, regardless of whether the accused is a juvenile, the Fernandez Court overruled prior jurisprudence in State in the Interest of Dino, 359 So.2d 586, 594 (La.1978), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), that required the State to affirmatively show that the juvenile engaged in a meaningful consultation with an attorney or an informed parent, guardian, or other concerned adult before the juvenile waived his constitutional rights. Lathers, supra at 1072. The Fernandez Court held that prophylactic rules in Dino were not constitutionally or statutorily required. Id. Thus, the absence of a parent is no longer dispositive of an inquiry into whether the juvenile defendant’s confession is voluntary. Id. However, the Lathers court espoused the belief that the State must be mindful of the constitutional privilege against self-incrimination and the right to counsel afforded juveniles in criminal investigations. Id. This Court cautioned that these privileges are not to be taken lightly and serious efforts must be made to preserve those rights in criminal matters in which the accused is a juvenile. Id.
In Lathers, the defendant was 15 years old at the time he confessed. At the suppression hearing, the detectives testified that they had made numerous attempts to locate the defendant’s guardian. However, as one of the detectives explained, because there was only a six-hour time span to process a juvenile, once they realized that they were probably not going to be able to contact the defendant’s mother, they decided to obtain a statement in her absence. Id.
Before doing so, one of the detectives explained the juvenile advice of rights form to the defendant, who signed the form, acknowledging his understanding thereof. The defendant then confessed. The detective testified that she believed |sthe defendant knowingly and intelligently waived his rights and that he was not threatened or coerced into making a statement. This assessment was in part due to the defendant’s familiarity with the court system: he was on active probation at the time of his arrest and had been advised of the same rights during previous arrests. Id. at 1072-73.
*749 Several hours later, the defendant’s mother arrived. The police reviewed the form again with her, which she signed. At the suppression hearing, the mother testified that she asked the officers how they were able to question her son in her absence and said she did not allow any further questioning of him. She further testified that her son had been arrested on two prior occasions. Lathers, supra at 1073.
In concluding that the defendant’s statement was knowing and voluntary, the majority of this Court relied on several factors. First, the defendant had an eighth or ninth grade education, and the circumstances did not appear to indicate that he was unable to understand the nature of his actions. Second, the evidence indicated this was the third incident in which the defendant had been advised of his rights; he was no stranger to the judicial system because he had previously been arrested, and was on probation at the time of his arrest. Third, it did not appear that defendant was under duress. Fourth, the defendant never said he wanted to speak to his mother, that he wanted a lawyer, or that he did not want to speak. And lastly, this Court acknowledged that the trial court took note of the detective who was a woman of small stature with a calm, non-intimidating demeanor. Id. at 1073.
Turning to the present case, we consider the Fernandez factors to decide whether, under the totality of the circumstances, defendant’s statement was knowing and voluntary.
| nDefendant’s mother was not given the opportunity to speak with her son, nor was defendant asked if he wished to talk to a parent. Nevertheless, since the absence of a parent is no longer the sole factor determining whether a juvenile defendant’s statement is knowing and voluntary, we consider the parent’s absence, whether reasonable or not, as only one of the factors in the totality of the circumstances. Bearing this in mind, we find that defendant’s statement was given knowingly and voluntarily for the following reasons.
First, the record indicates that defendant was properly advised of his Miranda rights. He was presented with the Juvenile Advice of Rights Form and read his rights. As the detective read each right, he asked defendant if he understood, and defendant indicated he did. The detective then encouraged defendant to read the rights again, to ensure his understanding thereof. As defendant re-read his rights, he placed his initials next to each one, and then signed his name. Detective Hoffman testified that he believed defendant understood his rights.
Second, there is no indication that defendant was unable to understand his rights or the consequences of waiving them. At the time, defendant was a 16-year-old ninth grader who could read and write. In Lathers, this Court noted the Louisiana Supreme Court’s recognition that there are 16-year-olds whose knowledge and comprehension of their legal rights surpass the knowledge and comprehension of many who are older. Id. at 1073 (citations omitted). This is especially pertinent here, where this was not defendant’s first police interrogation. In fact, Detective Hoffman testified that he had interviewed defendant before, and noting defendant’s experience, testified that defendant had been in and out of the criminal justice system. The detective also explained that defendant had been adjudicated in juvenile court on previous occasions, where each time his rights | mwere explained to him in detail during the Boykin colloquy. It was Detective Hoffman’s opinion that defendant had more experi *750 ence with the system and with law enforcement officers than the average citizen.
And lastly, the circumstances do not indicate defendant was coerced, nor did he appear to be under duress. In fact, Detective Hoffman found defendant to be “very cooperative.” Defendant had no issues with, complaints, or questions about the process, and he did not express any desire to speak to an attorney or parent.
We note that the trial judge stated that she could not consider the reasonableness of the absence of defendant’s mother, but that if she could, her ruling would be different. The trial judge then went on to conclude, based on the totality of the circumstances, that the juvenile was able to and had made a knowing, intelligent, and voluntary waiver of his rights in the absence of a parent. The presence or absence of a parent is a factor which may be considered by a court in determining admissibility of a custodial inculpatory statement, but once the evidence shows beyond a reasonable doubt that a juvenile has been properly advised of and has knowingly and voluntarily waived his rights, the reasonableness or justification of a parent’s absence becomes irrelevant to admissibility, as in the present case. Thus, although the trial judge could have considered the reasonableness of the mother’s absence, her denial of the motion to suppress upon finding that the defendant knowingly and intelligent waived his rights was not error.

J^CONCLUSION

Based on the totality of these circumstances, despite the absence of a parent, the trial court found defendant’s statement was given knowingly and voluntarily. Defendant here was 16 years old, had an eighth-grade education, was familiar with the criminal justice system, and had been advised of his rights on previous occasions. As a result, we find that the trial court did not abuse its discretion in finding defendant’s statement knowing and voluntary, and therefore the trial court did not err in denying the motion to suppress the statement. For the above discussed reasons, the defendant’s convictions and sentences are affirmed.

ERRORS PATENT REVIEW

We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find no errors patent in this case.
AFFIRMED
WICKER, J., dissents with reasons.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).